**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMILLAH A. TRAINER**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 23-1940-KSM** |
| **COUNTY OF DELAWARE**, | |
| Defendant. | |

**<u>MEMORANDUM</u>**

**Marston, J.**                                                                                      **June 18, 2024**

Before the Court is Plaintiff Jamillah Trainer's Motion to Reconsider the Court's Memorandum and Order granting Defendant County of Delaware's ("the County") motion for partial summary judgment.  (Doc. No. 52.)  The County opposes the motion.  (Doc. No. 54.)  For the reasons that follow, the Court denies the motion.

**I.       Background**

Because the Court writes for the parties, who are intimately familiar with this case, the Court only briefly restates the underlying facts here.  On May 5, 2023, Plaintiff filed her complaint in this matter alleging (1) a failure to make reasonable accommodations under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951, (2) disability discrimination under the ADA and the PHRA, (3) race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000, and the PHRA, and (4) unlawful retaliation under Title VII and the PHRA.  (Doc. No. 1.)  The County filed a motion for partial summary judgment, seeking to

dismiss all claims except Plaintiff's disability discrimination claims under the ADA and PHRA.[1] (Doc. No. 17.)  On June 3, 2024, the Court granted the County's partial motion for summary judgment, finding no disputes of fact existed in the record which could permit the jury to find that the County's legitimate, nondiscriminatory reason for not hiring Plaintiff was pretext for race discrimination.  (Doc. Nos. 42, 43.)

## II.     Legal Standard

"A timely motion for reconsideration under Local Rule 7.1(g) is considered analogous to a motion to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure."  *Kennedy Indus., Inc. v. Aparo*, Civil Action No. 04-5967, 2006 WL 1892685, at *1 (E.D. Pa. July 6, 2006).  "The purpose of a motion for reconsideration is to correct manifest errors of law or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  "Out of consideration for finality and judicial economy," courts should grant motions for reconsideration "sparingly."  *Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 728 (E.D. Pa. 2016) (citation omitted).  "A motion for reconsideration may not be used to give a litigant a 'second bite at the apple,' and therefore should not be 'grounded on a request that a court rethink a decision already made.'"  *Jarzyna v. Home Props., L.P.*, 185 F. Supp. 3d 612, 622 (E.D. Pa. 2016), *aff'd*, 783 F. App'x 223 (3d Cir. 2019) (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) and *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 637, 639 (E.D. Pa. 2010)).  Before altering or amending a prior decision, courts in this Circuit require the moving party to show one of three bases: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion []; or (3) the need to correct a clear error of law or fact or to prevent

---

[1] Plaintiff agreed that she will not pursue her failure to accommodate claims under the ADA and the PHRA or her retaliation claims under Title VII and the PHRA.  (Doc. No. 25 at 1.)

manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### III.    Analysis

Plaintiff relies on the third basis in her motion to reconsider, asserting that there was an error of law or fact in this Court's prior Memorandum and Order.  Plaintiff argues that based on the evidence produced in this case, it was an error of fact to dismiss Plaintiff's race discrimination claim.  (Doc. No. 52-2 at 6.)  In particular, Plaintiff argues that the facts show that (1) Rhoades knew that Plaintiff was out on medical leave, (2) Colucci was very familiar with Rhoades, (3) Warden Williams testified that she had a conversation with every interviewer about applicants who were not recommended for employment but claimed she could not recall any conversation with Rhoades about Trainer's application, (4) Warden Williams acknowledged that medical leave cannot be a reason to reject an applicant, and (5) Warden Williams knew that the three white applicants, Omelchuk, Serody, and Cullen, had been out on leave for a significant period of time, but still offered them a position of employment.  (*Id.* at 2–4.)  Based on these facts, Plaintiff argues that the Court improperly concluded that Warden Williams's testimony concerning her knowledge of the length of leave for Omelchuk, Serody, and Cullen was credible, and the Court should not determine the credibility of witnesses at summary judgment.  (*Id.* at 4–5 (citations omitted).)  The County responds that Plaintiff has failed to cite any evidence to contradict Rhoades's or Warden Williams's testimony, and that asking the Court to reconsider evidence simply based on the possibility that a jury could find Warden Williams or Rhoades untruthful would "eviscerate a defendant's chance of ever receiving summary judgment." (Doc. No. 54-1 at 3–4.)  For the reasons discussed below, the Court agrees with the County and rejects Plaintiff's argument that there was any error of fact.

First, Plaintiff argues that the Court was mistaken in holding that it was irrelevant to Plaintiff's race discrimination claim whether Plaintiff told Rhoades about her medical leave. (Doc. No. 52-2 at 4.)  However, we find that the only way this dispute could hypothetically be relevant to race discrimination is if Warden Williams knew that Plaintiff's long absence was due to being on medical leave, and at the same time Warden Williams also knew that the three white men, Omelchuk, Serody, and Cullen, were out on similarly long absences also due to medical leave.  If there was any evidence that Warden Williams knew this information, this could call into question the sincerity of Williams extending offers to the white men and not extending an offer to Plaintiff.  But, as discussed further below, Plaintiff fails to cite to any evidence in the record that Warden Williams knew the length of Omelchuk, Serody, and Cullen's medical leave. Thus, this dispute is irrelevant to Plaintiff's race discrimination claim.

Second, although Plaintiff argues that Warden Williams knew that Omelchuk, Serody, and Cullen had been on extended medical leave before extending offers of employment (Doc. No. 52-2 at 4, 6), the record is devoid of any evidence supporting this fact.  Plaintiff's only citation to the record in support of her argument is to Warden Williams's testimony (*see* Doc. No. 52 at 34), where she explicitly states she did *not* know the length of leaves for Omelchuk, Serody, and Cullen.  (*See* Doc. No. 17-9 at 73:17–22 ("A: But your original question was whether or not I was aware if [Robert Cullen] was out on any leave?  Q: Yes.  Were you?  A: I was *not* aware that he was out on any leave.") (emphasis added); *id.* at 74:4–76:16 ("Q: you interviewed Mr. [Serody].  Correct?  A: Yes. . . . Q: Did you know at the time that he had been out for a year or so because of a hand injury.  [Defendant's counsel objects to form.]  A: Worker's Compensation claim.  *I don't know the length of time.*") (emphasis added); *id.* at 76:20–77:8 ("Q: do you recall whether [John Omelchuk] was out on leave for a period of time

4

while he worked for GEO?  A: I believe he was as well.  I don't know the specifics.  Q: You

don't know how long he was out?  A: *No.*") (emphasis added).)  There is no other evidence in the

record to rebut Warden Williams's testimony that she was unaware of the length of their leaves,

and Plaintiff points to none, so the Court's acceptance of Warden Williams's testimony is not an

issue of credibility and is proper according to the Federal Rules of Civil Procedure.[2]  *See* Fed. R.

Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials"); Fed. R. Civ. P. 56(e) ("If a party . . .  fails to properly address another party's

assertion of fact as required by Rule 56(c), the court may . . .  consider the fact undisputed for

purposes of the motion."); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015)

("[T]he party opposing a motion for summary judgment 'must do more than simply show that

there is some metaphysical doubt as to the material facts.'  Rather, that party must point to

specific factual evidence showing that there is a genuine dispute on a material issue requiring

resolution at trial." (citing *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363

(3d Cir. 1992)); *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("We

note that an inference based upon a speculation or conjecture does not create a material factual

dispute sufficient to defeat entry of summary judgment."); *Moore v. Indehar*, 514 F.3d 756, 767

(8th Cir. 2008) (citing *Bodett v. CoxCom, Inc*., 366 F.3d 736, 740 n.3 (9th Cir. 2004) (noting that

---

[2] By the same token, there is no evidence in the record to refute Rhoades's testimony that Colucci had zero involvement in the hiring process and had no impact on Rhoades's decision to not recommend Plaintiff for employment.  (Doc. No. 26-2 at 42:19–19.)  As such, the Court accepts the testimony as fact. *See* Fed. R. Civ. P. 56(e); *Moore v. Indehar*, 514 F.3d 756, 767 (8th Cir. 2008) (citing *Bodett v. CoxCom, Inc*., 366 F.3d 736, 740 n.3 (9th Cir. 2004) (noting that a "party cannot create a dispute of fact by simply questioning the credibility of a witness")).

a "party cannot create a dispute of fact by simply questioning the credibility of a witness")); *id.* (citing *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998) (challenging the credibility of the movant's affiant is not, alone, generally enough to avoid summary judgment)); *Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001) ("The plaintiffs may not stave off summary judgment 'armed only with the hope that the jury might disbelieve witnesses' testimony.'" (citing *Gardener v. Buerger*, 82 F.3d 248, 252 (8th Cir. 1996)); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) ("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment.").[3]

Thus, the Court concludes that there was no error of fact warranting reversal of the Court's entry of summary judgment. Absent appropriate evidence to the contrary, the Court properly accepted Warden Williams' and Rhoades' undisputed testimony as fact, and Plaintiff cannot circumvent this by simply suggesting, without more, that these witnesses may not have been truthful. To do so would improperly impose an additional burden on defendants at the summary judgment stage to prove each witness credible, regardless of whether there was any evidence in the record to suggest a dispute fact in the first place.

---

[3] Plaintiff also argues that there is a credibility issue, (Doc. No. 52-2 at 3–6), because Warden Williams inconsistently testified that she had a conversation with every interviewer about each applicant who was not offered a position of employment, and yet she could not recall any conversation with Rhoades about Trainer's application. (Doc. No. 17-9 at 48:3–15.) However, the Court finds that there is no dispute of material fact implicating Warden Williams's credibility because Rhoades testified that he did not speak with Warden Williams regarding Plaintiff's interview. (Doc. No. 26-2 at 40). Plaintiff did nothing to rebut the testimony of both Rhoades and Williams, notwithstanding Williams's testimony that she generally spoke with the interviewers. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986) (noting that even "'discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.' Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment" (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984))) (alteration in *Anderson*).

**IV.      Conclusion**

For the foregoing reasons, the motion to reconsider is denied.  An appropriate Order follows.